# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVNINDER MANN and RASHVINDER SRA, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. <br> _____ / | Case No. 1:19-cv-01354-SKO <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> (Doc. 26) |

## I.  INTRODUCTION

In this action, Plaintiffs Avninder Mann and Rashvinder Sra ("Plaintiffs"), the owners of A-1 Liquor (the "Store"), a market and liquor store in Fresno, California, challenge the decision of the United States Department of Agriculture Food and Nutrition Service ("FNS") to permanently disqualify the Store from the Supplemental Nutrition Assistance Program ("SNAP"). (Doc. 1.) On January 21, 2021, Defendant United States of America ("Defendant") filed a motion for summary judgment (the "Motion") against Plaintiffs. (Doc. 26.) Plaintiffs filed an untimely opposition to the Motion.[1] (Doc. 27.) Defendant filed a reply on March 4, 2021. (Doc. 28.) The Court reviewed the

---

[1] Pursuant to the Scheduling Order (Doc. 22), the deadline for filing an opposition brief to a dispositive motion was February 18, 2021. (*Id.*) Plaintiffs filed their opposition on March 3, 2021, which would have been timely had Local Rule 230 governed, as the opposition was filed 14 days before the noticed hearing on the Motion on March 17, 2021. *See* E.D. Cal. L.R. 230(c).  Although Plaintiffs' opposition was not timely filed, the Court has exercised its discretion to consider the arguments set forth in the opposition brief and will not strike it from the docket as untimely.

1

motion and related papers and found the matter suitable for decision without oral argument pursuant to Local Rule 230(g).[2] The hearing set for March 17, 2021, was therefore vacated. (Doc. 30.)

For the reasons set forth below, the Court will GRANT the Motion.

## II.   BACKGROUND

### A.   Statutory and Regulatory Framework

SNAP, which is administered by FNS, offers food benefits to qualifying individuals and families with financial hardships. *See* 7 U.S.C. § 2011 *et seq.*; *see also Market v. United States*, No. 19–cv–00073, 2020 WL 4043819, at *1 (E.D. Wash. July 17, 2020). "SNAP operates similarly to a debit card, in which benefits are transferred to participants through an Electronic Benefits Transfer ("EBT") card. Participants may then spend their SNAP benefits by purchasing eligible items sold by approved SNAP retailers." *Rith v. United States*, No. 2:19–CV–01582–BJR, 2020 WL 7398750, at *1 (W.D. Wash. Dec. 17, 2020) (citing 7 U.S.C. § 2018 and 7 C.F.R. § 278.1).

The applicable regulations prohibit "trafficking" SNAP benefits. 7 C.F.R. § 278.6(e)(1)(i); *see also* 7 U.S.C. § 2021(b)(3)(B). Trafficking is defined as the "buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits . . . for cash or consideration other than eligible food[.]" 7 C.F.R. § 271.2. The presumptively mandatory penalty for trafficking is permanent disqualification from the SNAP program. 7 C.F.R. § 278.6(e)(1)(i) ("[FNS] shall . . . [d]isqualify a firm permanently if . . . [p]ersonnel of the firm have trafficked as defined in [7 C.F.R.] § 271.2"); 7 U.S.C. § 2021(b)(3)(B). However, a retailer found to have engaged in trafficking may be assessed a civil monetary penalty ("CMP") in lieu of disqualification if it "had an effective policy and program in effect to prevent" program violations and provides evidence that the retailer's ownership was unaware of the violations and did not approve, benefit from, or take part in them. 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(i).

### B.   Factual Background

FNS uses the Anti-Fraud Locator Using Electronic Benefit Retailer Transactions ("ALERT") system to monitor EBT transactions at participating stores and flag spending patterns it deems suspicious. (Doc. 26-1 at 4; Administrative Record ("AR") at 136.) In 2018, the ALERT

---

[2] The parties consented to the jurisdiction of U.S. Magistrate Judge Sheila K. Oberto. (Docs. 19, 20.)

system detected patterns of SNAP transactions at the Store consistent with trafficking. (AR 116–34). FNS began an investigation and sent an inspector to visit the Store in October 2018. (*See* AR 75–115.) The inspector observed that the store had two cash registers, one of EBT point-of-sale device, and no shopping carts or baskets for customer use. (AR 75.) The most expensive SNAP-eligible item for sale was a four pack of Red Bull energy drinks for $7.99. (AR 76.)

FNS also reviewed and analyzed the Store's SNAP transaction data between April and September 2018 for evidence of irregularities. (AR 137.) The analysis identified eighteen sets of multiple SNAP transactions from the same households within a set time period, totaling $2,335.65 in SNAP benefits. (*See* AR 144, 162–64.) FNS also noted that, during the review period, the average convenience store transaction in California was $7.05, and the largest purchase amount at the Store was $79.48. (AR 145.) Of the 7,005 total SNAP transactions conducted at the Store during the review period, 227 of those were for an amount over $27.68. (AR 145.) The total amount of the 227 flagged transactions was $10,005.75. (AR 169.)

On December 3, 2018, FNS sent the Store a "charge letter" formally notifying it of the trafficking charge and including a list of the suspicious transactions. (AR 159–69.) The letter informed Plaintiffs of their right to respond to the allegations and to request to pay a CMP in lieu of permanent disqualification. (AR 159–60.) To qualify for a CMP, Plaintiffs had to provide documentation proving that they satisfied the regulatory criteria set forth in 7 C.F.R. § 278.6(i). (AR 159.)

On December 12, 2018, Plaintiffs responded to the charges via a declaration from Plaintiff Mann, denying that the Store had engaged in trafficking. (AR 173–74.) Mann stated that the Store stocked a variety of food items, including milk, baby formula ($22.00), gallons of orange juice, cereal boxes ($4.99 to $5.99 per box), explaining that "[i]t is easy to have a transaction exceeding $45 when baby formula, milk, juice and cereal are purchased." (AR 173.) According to Mann, neighborhood residents visited the Store several times a day, often as a family unit. (AR 173.) On many occasions, the family member with the EBT card would complete a purchase, only to have another family member arrive at the checkout counter with additional items, thus resulting in two or more transactions close together during a single visit. (AR 173.) Another reason for multiple

3

transactions on a single account in a set period was that different members of the same family would visit the Store separately on a given day, all using the same EBT card. (AR 173.)

Plaintiffs also contested FNS's statistical evidence supplied in support of the alleged violations, asserting that the evidence was "flawed" because "it contain[ed] many alleged irregular transactions that cannot be real since [the transactions] supposedly took place at times that the [S]tore was closed." (AR 174.) Alternatively, should FNS determine that trafficking had occurred at the Store, Plaintiffs requested a CMP in lieu of permanent disqualification and submitted training logs and a "Training Guide for Retailers" from FNS as evidence of the Store's compliance policy. (AR 174, 179–204.)

On December 19, 2018, after evaluating Plaintiffs' response, FNS determined the charge of trafficking had been substantiated and permanently disqualified the Store from SNAP. (AR 216–17.) FNS found that Plaintiffs were not eligible for a CMP because the documentation they submitted failed to demonstrate that they had established and implemented an effective compliance policy. (AR 216.) Upon notice of FNS's decision, on December 29, 2018, the Store appealed to the administrative review branch of FNS (*see* AR 222–24), which upheld the trafficking finding and the resulting sanction on August 19, 2019. (AR 296–308). On September 25, 2019, Plaintiffs sought judicial review in this Court. (Doc. 1.)

### III. LEGAL STANDARD

#### A. Summary Judgment

Under Federal Rule of Civil Procedure 56, a district court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party," *Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1104 (9th Cir. 2020) (quoting *Tauscher v. Phx Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019)), and a fact is "material" where it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgement, the court is "required to view the facts and

draw reasonable inferences in the light most favorable to the [nonmoving] party." *VHT, Inc. v. Zillow Grp., Inc.*, 461 F. Supp. 3d 1025, 1034 (W.D. Wash. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). Thus, the court must "accept the nonmoving party's evidence as true and draw all reasonable inferences in its favor," but, at the same time, the nonmovant "may not rest upon the mere allegations or denials of its pleading." *Market*, 2020 WL 4043819, at *2 (citing *Anderson*, 477 U.S. at 248–49, 255).

### B. Judicial Review of SNAP Disqualifications

A retailer disqualified from participation in the SNAP program may appeal the decision to an administrative body within the United States Department of Agriculture ("USDA"). 7 C.F.R. § 279.1; 7 U.S.C. § 2023. If the administrative appeal is unsuccessful, the retailer may seek judicial review. 7 U.S.C. § 2023(a)(13); 7 C.F.R.§ 279.7(a). Judicial review of an administrative disqualification is a two-part inquiry. First, the Court undertakes a "trial de novo" to determine the validity of the FNS's finding that the retailer violated SNAP program regulations. 7 U.S.C.§ 2023(a)(13), (15); *Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997). This inquiry is broader than review under the Administrative Procedures Act, particularly in that "the plaintiff 'may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency.' " *Kim*, 121 F.3d at 1272 (quoting *Redmond v. United States*, 507 F.2d 1007, 1011–12 (5th Cir. 1975)).

The retailer bears the burden of proving, by a preponderance of the evidence, "that the violations did not occur" at the first step of the inquiry. *Kim*, 121 F.3d at 1272 (citing *Plaid Pantry Stores, Inc. v. United States*, 799 F.2d 560, 563 (9th Cir. 1986)). To successfully oppose a motion for summary judgment, "the retailer must identify genuine disputes of material fact concerning *each* of the violations with which it is charged." *Market*, 2020 WL 4043819, at *3 (citing *Young Choi Inc. v. United States*, 639 F. Supp. 2d 1169, 1180 (D. Haw. 2009)) (emphasis in the original). "The mere fact that the retailer was not 'caught "red-handed" engaging in . . . fraud' will not suffice to save it from disqualification." *Id.* (quoting *Kahin v. United States*, 101 F. Supp. 2d 1299, 1303 (S.D. Cal. 2000)). "Indeed, the retailer's disqualification may be upheld upon evidence of 'irregular and suspicious activity,' "such as large SNAP transactions or rapid repetitive transactions, especially

where the retailer is a small store. *Id.* (citing *Idias v. United States*, 359 F.3d 695, 698 (4th Cir. 2004) (citing *Kahin*, 101 F. Supp. 2d at 1303–04 and 7 C.F.R. § 278.6(a))). Furthermore, "general justifications for large expenditures" are insufficient to rebut evidence of fraudulent SNAP benefit activity. *Young Choi*, 639 F. Supp. 2d at 1179. Instead, the retailer must present evidence tending to establish the legitimacy of "each transaction FNS alleges as suspicious." *Id.* at 1178 (citing *Kahin*, 101 F. Supp. 2d at 1303).

"If the retailer fails to carry its burden of showing the alleged violations did not occur, the Court proceeds to the second step of the analysis, where it must evaluate whether the sanction the USDA imposed was arbitrary and capricious." *Market*, 2020 WL 4043819, at *3 (citing *Plaid Pantry Stores, Inc.*, 799 F.2d at 561). "Under the arbitrary and capricious standard, the court examines 'the sanction imposed by the FNS in light of the administrative record to judge whether the agency properly applied the regulations [and] to determine whether the sanction is unwarranted in law . . . or without justification in fact.' " *Wong v. United States*, 859 F.2d 129, 132 (9th Cir. 1988) (quoting *Plaid Pantry Stores*, 799 F.2d at 563).

## IV. DISCUSSION

FNS determined that the Store trafficked SNAP benefits based on 275 transactions which fell into two categories of suspicious activity indicative of trafficking: (1) repetitive transactions in a set period by the same household/account; and (2) excessively large purchases made from SNAP recipient accounts. (AR 159.) To defeat Defendant's motion for summary judgment, Plaintiffs must identify evidence creating at least a genuine dispute of material fact as to the legitimacy of each of those transactions. *Young Choi*, 639 F. Supp. 2d at 1179. Having reviewed the record in this matter, the Court finds Plaintiffs have only proffered general justifications lacking a specific evidentiary basis and have thus failed to carry that burden.

### A. Repetitive Transactions in Set Period

The ALERT system identified eighteen sets of transactions in which several households made multiple purchases within set timeframes using SNAP benefits. (*See* AR 162–64.) FNS explained that "[m]ultiple transactions, conducted within a set time period, are methods which stores use to avoid single high dollar transactions that cannot be supported and are indicative of

6

trafficking." (AR 144.) In response to the allegation, Plaintiff Mann submitted a declaration with several explanations for the repetitive transactions, including forgotten items, requests for additional purchases by other family members after a transaction had been completed, and that various members of a single family visit the store separately throughout the day using the same card. (AR 173–74.)

"District Courts have consistently held that a pattern of rapid, repetitive large transactions is sufficient to affirm FNS's conclusion that trafficking likely occurred." *Rith*, 2020 WL 7398750, at *8 (citing *Market*, 2020 WL 4043819, at *4; *Capellan v. United States*, No. 17 CIV. 9342 (AT), 2020 WL 1047907, at *5 (S.D.N.Y. Mar. 4, 2020); *Khera v. United States*, No. 17–cv–1827, 2019 WL 2610966, at *6 (C.D. Cal. May 10, 2019); *SS Grocery, Inc. v. U.S. Dep't of Agric., Food & Nutrition Serv.*, 340 F. Supp. 3d 172, 181 (E.D.N.Y. 2018); *Kee Lee v. United States*, No. 1:11–CV–0881 AWI DLB, 2013 WL 127752, at *8 (E.D. Cal. Jan. 9, 2013), *aff'd*, 623 F. App'x 886 (9th Cir. 2015); *Young Choi*, 639 F. Supp. 2d at 1180; *Jackson v. United States*, No. C–08–02770 EDL, 2009 WL 941766, at *7 (N.D. Cal. Apr. 3, 2009); *Kahin*, 101 F. Supp. 2d at 1303).

Plaintiff Mann's general explanations in his declaration are insufficient to create a genuine issue of material fact. A "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Khera*, 2019 WL 2610966, at *6 (quoting *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997)); *Market*, 2020 WL 4043819, at *4 ("Plaintiff's declaration is conclusory, self-serving, devoid of supporting evidence, and does not purport to explain any specific, allegedly fraudulent transaction."). Plaintiffs did not submit affidavits from customers involved in the flagged transactions or any other evidence specifically addressing the suspicious transactions. *See Rith*, 2020 WL 7398750, at *8 ("Plaintiffs' explanations do not address the specifics of the 12 transactions flagged by the ALERT system, but only describe trends observed by Plaintiffs in the abstract."); *Khera*, 2019 WL 2610966, at *6 ("Plaintiffs do not explain why customers would request to split a single large sale into multiple transactions on the same card. Nor do [Plaintiffs] provide any declarations from customers confirming that such a practice exists or providing a justification for it. Rather, the only evidence Plaintiffs cite to show that the two transactions of $50 were not an incident

of trafficking are the above statements made by [one of the Plaintiffs]."); *Duchimaza v. United States*, 211 F. Supp. 3d 421, 435 (D. Conn. 2016) (rejecting retailer's explanation that large families would shop together using same benefits card where supported only be "conclusory assertions for which Plaintiffs provide no evidence"); *Jackson*, 2009 WL 941766, at *7 ("Even if the Court were to agree that Plaintiff's explanations about the spending habits of her customers tend to 'negate some of the inferences from the EBT data and raise some material issues of fact, they do not sufficiently account for all the suspicious activity.' [Citation.] Plaintiff failed to provide evidence to explain the more than 200 suspicious transactions here.").

Courts have often rejected many of the same explanations proffered by Plaintiffs. *See e.g.*, *Market*, 2020 WL 4043819, at *4 (rejecting explanation that customers split transactions into sets, buying bulk items separately or making additional purchases after realizing remaining benefits, where the explanation was supported by only the plaintiff's "self-serving" declaration); *Duchimaza*, 211 F.Supp.3d at 435 (rejecting plaintiffs' explanations that different family members come in throughout the day and use the same card to make purchases); *Jackson*, 2009 WL 941766, at *7 ("Although [the plaintiff] argued that the smaller purchase could be of a forgotten item, the subsequent purchases were at times for amounts that exceeded a nominal, afterthought purchase amount."); *Kahin*, 101 F. Supp. 2d at 1303 (rejecting unspecific explanations for rapid transactions involving same account). Because only one trafficking transaction is sufficient to uphold a permanent disqualification, Plaintiffs' "failure to refute the specific transactions is fatal." *Rith*, 2020 WL 7398750, at *8.

### B. Excessively Large Transactions

In permanently disqualifying the Store from SNAP, FNS also relied on proof of a pattern of excessively large transactions. (AR 165–69.) FNS found 227 transactions during the review period to be suspect based on their total dollar value (over at least $27.68 with the highest being $79.48) given the size, inventory, and layout of the Store. (A.R. 145, 147–58.) According to FNS, the average transaction amount at a convenience store in California during the review period was $7.05, so for the Store to have over 200 transactions over $27.68, which is almost four times the average convenience store transaction amount, was "very unusual and highly unlikely and indicative of

trafficking." (A.R. 145.) Plaintiffs respond that the Store sells a variety of SNAP-eligible food items, including snacks, milk, baby formula ($22.00), cereal ($4.99–$5.99), orange juice gallons ($4.99), and "[i]t is easy to have a transaction exceeding $45 when baby formula, milk, juice and cereal are purchased." (AR 173.)

As with the repetitive transactions pattern, district courts have found a pattern of excessively large purchases to be indicative of trafficking. *See, e.g.*, *Market*, 2020 WL 4043819, at *3–*4; *SS Grocery*, 340 F. Supp. 3d at 182–83; *Young Choi*, 639 F. Supp. 2d at 1179. For example, in *Market v. United States*, the District Court found that the plaintiffs' explanation—that the frequent sale of teff flour ($45.00 per bag) accounted for the number of high-value SNAP transactions at their store—"amount[ed] to no more than a 'generalized explanation[ ] for large expenditures' lacking any specific evidence in the record, and [wa]s therefore insufficient to overcome summary judgment. [Citation.]" *Market*, 2020 WL 4043819, at *4.

Here, as in *Market*, Plaintiffs have offered no additional evidence beyond Plaintiff Mann's general explanation in his declaration that some combination of items from the Store could result in the larger transaction amounts flagged by the ALERT system as suspicious.[3] *Cf. Rith*, 2020 WL 7398750, at *9*10 (finding that a dispute of fact existed as to the excessively large transaction pattern where the plaintiffs submitted photographs of bulk items stocked in the store and affidavits from several customers attesting to their spending habits at the store). Accordingly, the Court finds that Plaintiffs have failed to present competent evidence to raise a genuine dispute as to any material fact and rebut FNS's conclusion that the Store frequently engaged in excessively large SNAP transactions.

## C. Timing of the Suspicious Transactions

In opposing the charges of trafficking, Plaintiffs also contest FNS's statistical evidence supplied in support of the alleged violations, asserting that the evidence was "flawed" because "it contain[ed] many alleged irregular transactions that cannot be real since [the transactions]

---

[3] In *Market*, the plaintiffs also submitted declarations from the store's customers, attesting, among other things, that the declarant is a regular customer of the store and can easily purchase more than $100.00 worth of SNAP-eligible items in a single transaction. *Market*, 2020 WL 4043819, at *4. The court found the declarations insufficient to avoid summary judgment as "none of these short, conclusory declarations . . . explain whether the declarant shopped at the Market during the period of alleged trafficking, much less explain any of the fraudulent transactions." *Id.*

supposedly took place at times that the [S]tore was closed." (AR 174.) Plaintiffs submitted an account history report from the Store's security company showing when the opening and closing signals were activated during July through September 2018, and Plaintiffs highlighted the transactions from the charge letter that occurred when the Store was purportedly closed. (AR 273–83.) In the final agency decision, the administrative review officer ("ARO") addressed this contention, explaining:

> While on first glance, this evidence appearing convincing, further investigation revealed that the State of California had changed its EBT host processor during the month of July. EBT host processors report transaction times differently. California's new initial EBT host processor reported actual terminal transaction dates and times, while the new EBT host processor reported the host date and time. In this case, the new EBT host processor was located in a different time zone, with a three-hour time difference. Accordingly, each transaction time in the month of July was reported as three-hours after the actual transaction time in California. Accounting for this time difference, each of the highlighted transactions took place during a time when the firm was open according to the security company's report.

(AR 306.)

Plaintiffs claim that summary judgment is not appropriate based on FNS's allegedly flawed statistical evidence and assert that "the evidence of this purported explanation [that the new EBT host processor was located in a different time zone] needs to be examined before any determination can be made by this court." (Doc. 27 at 3.) Defendant replies that Plaintiffs have failed to present any evidence rebutting FNS's explanation that the flagged transactions did indeed occur when the Store was open because the times were reported from a different time zone, and Plaintiffs do not contend there are any inconsistencies after accounting for the time difference. (Doc. 28 at 3.)

"[T]he nonmoving party may not rest upon the mere allegations or denials of its pleading but must instead set forth specific facts, and point to substantial probative evidence, tending to support its case and showing a genuine issue requires resolution by the finder of fact." *Market*, 2020 WL 4043819, at *2. Here, Plaintiffs offer no evidence rebutting that the transaction times were reported from a different time zone, as set forth in the final agency decision, asserting only that FNS's explanation "appears to be very convenient." (Doc. 27 at 3.) This is insufficient to overcome Defendant's motion for summary judgment.

In any event, Plaintiffs contest the statistical evidence from only the period between July and

September 2018.  Even assuming that portion of the statistical evidence is flawed, Plaintiffs have failed to carry their burden to "identify genuine disputes of material fact concerning *each* of the violations with which it is charged," *Market*, 2020 WL 4043819, at *3, given that the statistical evidence from the remainder of the review period—from April to June 2018—is uncontested.  By the Court's count, seven of the eighteen flagged sets of transactions forming the basis of charge one (repetitive transactions in set period) and 97 of the 227 transactions forming the basis of charge two (excessively large transactions) are from either April, May, or June 2018.  Thus, even if the statistical evidence from July through September 2018 is flawed, Plaintiffs have failed to raise a dispute of material fact as to the statistical evidence from April through June 2018.  Because a single trafficking transaction warrants permanent disqualification from participation in SNAP, *see Rith*, 2020 WL 7398750, at *8, Plaintiffs' failure to rebut the whole of the statistical evidence entitles Defendant to summary judgment.

### D. The Sanction of Permanent Disqualification Was Not Arbitrary and Capricious

Permanent disqualification is presumptively mandatory where a retailer is found to have engaged in trafficking.  7 C.F.R. § 278.6(e)(1)(i) (providing FNS "*shall* . . . [d]isqualify a firm permanently if . . . [p]ersonnel of the firm have trafficked as defined in [7 C.F.R.] § 271.2" (emphasis added)).  FNS may assess a monetary penalty in lieu of disqualification where the retailer produces evidence of a plan to ensure compliance with SNAP regulations and demonstrates that the store's ownership was ignorant of the violations and did not benefit from them.  *See* 7 C.F.R. § 278.6. Plaintiffs contend that the CMP should have been granted in lieu of permanent disqualification. (Doc. 27 at 3.)  Defendant asserts that permanent disqualification was warranted under the circumstances, as the evidence of compliance-policy training provided by the Store was not credible. (Doc. 26-1 at 14.)

The Court finds that the sanction of permanent disqualification imposed by FNS was not arbitrary and capricious.  In making that determination, FNS properly applied the statutory and regulatory criteria for assessing a CMP and considered Plaintiffs' evidence of compliance-policy training. (AR 216, 307–08.)  Plaintiffs submitted copies of three employees' training logs certifying that on the date of hire, the employees received SNAP training.  (AR 179–81.)  Two of the three

11

employees, however, were hired on July 1, 2015, over a month before Plaintiffs applied for SNAP authorization, and over two months before being authorized. (*See* AR 16, 17980.) As the ARO noted, "It seems unlikely that a firm would train employees prior to applying for authorization." (AR 307.)

Furthermore, the training logs indicate that on January 6, 2017, two of the three employees reviewed a SNAP Training Guide that was eighteen pages long. (AR 179–80.) The SNAP Training Guide, however, was not revised down to eighteen pages until January 2018, and the version active in 2017 was 25 pages. (AR 307.) Therefore, the Store's employees could not have reviewed an eighteen-page guide on January 6, 2017.

Because FNS reasonably determined that Plaintiffs failed to produce sufficient evidence of compliance-policy training, which is a requisite to imposition of a CMP, the Court concludes that FNS's decision to permanently disqualify the Store from SNAP was not arbitrary and capricious.

### V. CONCLUSION AND ORDER

Based on the foregoing, Defendant's motion for summary judgement is GRANTED. The Clerk of the Court is directed to enter judgment against Plaintiffs and for Defendant, and to close this case.

IT IS SO ORDERED.

Dated: **May 6, 2021**　　　　　　　　　　/s/ *Sheila K. Oberto*
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE